Our next case for argument today is 23-1943, HD Silicon Solutions v. Microchip. Ms. Brooks, please proceed. Good morning, Your Honors, and may it please the Court. My name is Sarah Brooks, and I represent the appellant, HD Silicon Solutions. We're here today on the 002 patent, and there's three issues on appeal. The first issue is claim construction, and the term being construed is software layer. Now, both parties agree that the term software layer should be given its plain and ordinary meaning, and the Board agreed that the term software layer should be given its plain and ordinary meaning. However, the parties disagree as to what the plain and ordinary meaning of software layer is. Microchip argues that the term software layer means code at a particular level, and cites to dictionary.com in support of the word level, I'm sorry, the word layer. Well, the claim says a software layer. I'm sorry, I couldn't hear you. The claim says a software layer, and so that certainly must include one, right? Well, the case law that they cite, Your Honor, does not say that a software layer means one. It doesn't say that it means only one. It can include one or more, but if it includes one, doesn't Giles anticipate or render the claim obvious? Well, our interpretation of the word, the term software layer, Your Honor, is not that a software layer itself means two or more. What we're saying is that a person of ordinary skill, when they see the word software layer, they understand that a software layer must interface or interact with other layers. So the other layers are implied to be interacting, not that the term a software layer means two or more, just that it would mean to a person of ordinary skill that it's a relationship, right? If I can provide an example, because Microchip cites to dictionary.com, and they say a layer is like a layer of clothing worn over or under another. Well, a layer, you can talk about a layer of clothing, but also understand that the layer is only a layer because it is worn above or under another. So the same is true of our argument of a software layer. You can talk about an individual software layer, but understand that it's only a software layer by virtue of its relationship to another software layer that's above or under it. But it still can include one. I understand what you're saying, Your Honor, but in our view, it is describing a relationship to other software layers. I understand your position. So our definition of software layer is wordy, but is supported by intrinsic and extrinsic evidence. Our definition is that a software layer means computer program code executed on a processor that comprises one level of hierarchy of functional components that interfaces with neighboring levels. Now, the second issue on appeal is whether there was substantial evidence to determine... Before you move to the second issue, the embodiments at Figures 5 through 7, I think the board found would have been excluded from the claims under your more wordy construction. If that's what the board found, why were they wrong about that? Figures 5 and 7... I think 5, 6, and 7. So those figures, Your Honor, especially Figure 5, it's just a flow diagram. So Figure 5 is depicting one aspect of Figure 4. It's a flow diagram. The same is true, I believe, of Figure 7. If you look at Appendix 38, which describes the figures, it says Figure 7 is a data flow diagram, and Figure 5 also says is a flow diagram. If you look at the description of Figure 4, it says that it's a block diagram in accordance with embodiments of the invention. Embodiments, plural. And then Figure 6, in contrast, it actually says it's one embodiment of the present invention. Well, but if the board is correct as a factual matter that Figure 6, which is one embodiment of the present invention, shows only one software layer, why doesn't that suffice? Well, it shows the trusted software layer. It could, according to Figure 4, it's the trusted software and the untrusted software are interfacing or interacting. It could be not depicted in Figure 6, but, again, a person of ordinary skill in the art that understands the term software layer would understand that it is interfacing or interacting with other software layers, whether or not it's depicted in Figure 6. So you think that resort to your expert's testimony is necessary to reach the conclusion that you want on the plain and ordinary meaning? Well, I think even microchip's expert agreed that a software layer means more than one. No, more than one layer. Not more than one layer of software, right? A software layer could be hardware. There would be hardware layers, couldn't there? Yes. So the word layer may imply layering, but it doesn't mean all of those layers are software. Right, understood. Well, in Giles, for example, a microchip's expert says that it, he says that there is not clear that there's more than one layer in Giles. Well, but the board found that there was. I mean, I'm looking at page 662 of the appendix, which is the picture from Giles, right? This is the picture from Giles, page 662 in the appendix. And the board expressly found, and I'm going to say it because it quotes from page 12. While we're looking at the figure, I'll read the quote from page 12 of the board's opinion. Giles teaches that its code, 163, that's the software layer, has access to OTP memory module 122, that's on the bottom right, within a secure processor, secure component 102. In fact, patent owner acknowledges that Giles describes the software 163 may have privileged status as a secure privilege mode device with full access to the entire map of the component 102. And before you say something different, the board, as a factual matter, found 102, which includes all of that. It includes the software layer and the OTP memory was all part of the same secure processor. So unlike the prior art that you overcame during prosecution, where you pointed to the software layer communicating with something outside of the single processor, the board in this case found that the software layer 163 was communicating with the OTP memory and found both of those were within the same secure processor, which makes it different from your prosecution history argument that you made. So why isn't that sufficient? I think we're talking about a different issue now, right? Are we talking about claim construction still? Because I'm a little confused. This was an argument I think we made as to whether Giles... I'm sorry, you're exactly right. I'm now talking about what Giles discloses, but you admitted that the word layer could include a software layer and a hardware layer, right? And you admitted that things have to be in communication with each other. And I'm showing you that the Giles reference discloses a software layer, the board defined it in its fact findings at 163, and at least a hardware layer, which by the way has some software in it, but that the OTP memory defined it as all within the secure processor and defined them as communicating with each other. So unless your construction requires two different software layers, Giles discloses what I think you've acknowledged your construction includes, which is a software layer that can communicate with a hardware layer. Your argument is that the board wasn't giving the word layer any meaning, that it was, when it said it could be a single layer, that that was a problem. And I think the board did give the word layer meaning, and I think as they applied it to Giles, it's clear the meaning they gave it. And I don't see your construction argument precluding that very fact finding the board made. So I don't remember that argument being made before the board. The only argument that Microchip... I just read to you from the board's fact findings. So you may not think that argument was made before the board, but that is precisely what they found as a factual matter. Okay. Well, Microchip, the only place where Microchip makes an argument that a hardware layer, for example, could be a layer is in their experts' reply declaration. And what they say, and this is at appendix 1375, what he says for the first time is that the boot ROM code, which is 163, is interacting with the EJTAG port, which is the scan interface. So I don't think Microchip ever made the argument that the hardware part of what the boot ROM code is interacting with is OTP memory. So I guess that's what is making you confused. Are you saying that the board found that the hardware part... I'm saying I don't think the board read the word layer out of the claims at all. I think the board read the word layer as potentially not requiring multiple layers of software stacked on top of each other. But I don't think they read the word layer out. You argued to us that the board rendered the word layer superfluous. That's what you argued, and I'm trying to explain to you that I don't think that's accurate. It doesn't square with my reading of the board opinion, where they seem to have utilized the word layer to include potentially a hardware layer, and then they went on to make fact findings that Giles actually teaches exactly that, and that's why this element is actually present in Giles. So that's what I think they did. Maybe not as clearly as I just did. Fair enough. But that's the way I interpret their opinion. Well, going back to the layers stacked on top of each other, that is exactly what Microchip's expert did argue at his deposition. Not only did he talk about dictionary.com, the layers of clothing, the other examples he used were layers of cake, one stacked over another. I have a reference for you, Appendix 1648. He talked about layers of cake stacked one on top of another. He also talked about layers of rock that would be exposed in the Southwest. All the examples that he cited as extrinsic evidence, but inside Appendix 1648, he cited various patents and other things. These are all three layers, three shells or layers. Again, they never point to anything like that in Giles until the reply declaration after his deposition, in which they say the boot ROM code interacts with the AJTAG port, which is the scan interface. And I guess going back to our definition in the time that I have left, we did point to a software textbook that says, a recurring theme in any discussion of software architecture or architecture styles is that of layering. The essential concept is simple. The structure of the system or part of it is organized into a set of layers, each stacked one above another with well-defined interfaces between each layer. So we think that is very similar to the definition that we've proposed. At his deposition, we asked a microchips expert whether that would be a reasonable definition. I just don't see how that changes anything in your favor. The board found Giles discloses this by having the software layer talk to the memory, which is all on the same processor. I guess I don't see the argument you're making as leading to any different outcome. Well, let's talk about the functional aspect of our definition, because the boot ROM code in Giles is just at startup. It's at initiating the computer. I'll make it as simple as I can so we can avoid the complexity. If I say you're dressed today in layers and you have a shirt layer and you have a jacket layer, if I say you're wearing a shirt layer, that doesn't necessarily imply you've got to have three shirts. You could have a shirt, a t-shirt, a bra, a jacket, whatever. You're wearing layered clothing. When you go skiing, you wear layers. They're not all the same layer. In this case, how did the board fail to give meaning to the word layer to the extent that it found the prior art disclosed hardware and software layers that interact with each other? Again, I didn't read that part of the board's final written decision as being as clear as what you're articulating today. I did not read that in Microchip's argument until their reply declaration, and they are arguing in the reply declaration that not what you're saying today, that the OTP memory is the hardware layer, but the JTAG port, the scan interface, is the other layer that it's interacting with. But you agree the board found the OTP. In that quote from page 12 of their opinion that I read out loud, the board found that there's interaction. Sure. Okay. Sure. I agree. I never go outside board fact-finding, so I just want to make sure that I'm not wearing it up here. The boot run code is interacting with the OTP memory, absolutely, in Giles. I did not understand that the board then said that the OTP memory is a hardware layer, because I don't think they reached the finding that more than one layer was required. I don't think they agreed that there needed to be another layer, be it hardware or anything else. They didn't agree with you. They didn't expressly say more than one layer is required. That's why I started by saying I don't think you win even if you win, because I think their fact findings preclude your victory, even if I thought they erred in their claim construction, which I don't, because I think they applied it correctly. What I'm saying is if I just give you those words you want, minus that it has to be two software layers, because I don't think it has to be two software layers, just like I don't think you have to wear two shirts on top of each other. If there are layers, I think they expressly found layers in the prior art. I think what you're saying, though, is that if you do agree, and maybe you don't, that a software layer, the term software layer to a person of ordinary skill, would imply that it's interacting with another layer, be it software or hardware, that is not the construction they came up with. It was just code at a particular level. Yeah, but even if you're right about the construction, their fact finding is clear that this software layer is, in fact, interacting with another piece of hardware. So even if they got the construction wrong, under the construction that may be the correct one, they've made fact findings that still result in your client not prevailing. So you're saying if you reversed their claim construction, came up with a new claim construction, remanded it, it would still be the same? I wouldn't remand it because they've already made fact findings on this record that support the same outcome they've reached. Okay, understood. So that's the problem. Okay, let's let him do something. I'm sorry if I downplayed his argument. I apologize. Thank you, Your Honors. Good morning. Brett Shuman on behalf of Microchip. May it please the Court. Obviously, I've been listening to the questions. On the claim construction issue, Appellant has tried to make a claim construction issue about the term software layer. A lot of discussion about levels and layers. Same thing happened at the PTAB. It's in the record. It was discussed by the PTAB judges. Very similar questions, actually, at Appendix 423, 426. The PTAB boiled down the claim construction issue by quoting patent owner. This is on page 9 of the appendix. It's page 9 of the final written decision, the judgment. Patent owner noting that both parties proposed constructions used the word levels and code stating, and this is a quote from patent owner, the main difference between the parties' constructions is that patent owner contends there's more than one layer of software, whereas petitioner's construction does not allow for that. I heard Ms. Brooks say, I was a little surprised, our construction doesn't mean two or more layers of software. The board quoted patent owner as saying below there has to be two or more or more than one layer of software. I think Judge Lurie's first question gets to the issue, the claims. Where we start, the intrinsic record says a software layer. And our argument is not that the claims are limited to one software layer, because Figure 4 has trusted and untrusted multiple layers of software. Our argument is the claims have to include one layer of software, or they could include more than one layer of software. Software layer is not defined anywhere in the intrinsic record, period. So patent owner's argument relies on a lot of extrinsic evidence from their own expert and purported admissions, which I'll get to in a second, from our expert at deposition. But software layer is not defined anywhere in the patent. There were some questions about Figures 5 through 7. I think those are very good examples. Patent owner's construction, two or more software layers, would exclude the embodiments described in Figures 5, 6, and 7. And it's not just the figures themselves. Patent owner's counsel was discussing how the figures are drawn. But the actual description, in the written description of Figures 5, 6, and 7, this is starting at Column 6, Line 15, and it goes all the way through Column 10, nearly to the end of the written description, describing Figures 5, 6, and 7. They just talk about a single piece of software, trusted software. That's a software layer which is covered by the claims. I appreciate all that, but is it possible that the Board misunderstood, notwithstanding the quote of their own statement, but misunderstood what they were trying to argue on the claim construction? Because today's not the first day that they tell us the issue is not whether two or more software layers are required. They said that, at least in their gray brief at Page 1, that the issue is instead, on the claim construction, whether the term software layer itself indicates a relationship in which that one layer interfaces with another. If that's really what they mean, do you dispute that? Does that change the outcome here? Well, two things. Their construction position has clearly been shifting, and so I don't think the Board misunderstood their claim construction. It's on Page 9, again, in the appendix. It's a direct quote, so it's not an interpretation or a characterization. Second, the intrinsic record does not provide any support for what I think Ms. Brooks accurately characterized as a bit of a wordy construction, and the part you're referring to of their construction, a hierarchy of functional components that interfaces with neighboring levels. That's not anywhere in the intrinsic record, and as I think the colloquy between Chief Judge Moore and Ms. Brooks was demonstrating, even if some interaction is required, there's plenty of interaction going on in Giles. The reference that the Board found rendered the challenge claims obvious. There's plenty of interaction going on between the levels. The code, OTP code 163, the boot ROM code it's referred to, interacting with the secure component, which is a secure processor, and that's supported by the Board's fact finding. So there is interaction. Right. So for purposes of the appeal, you don't dispute that the proper construction could include a necessity of interaction, and you think you still win? Yeah. I think interaction is established, so we still win. I think this is perhaps what Chief Judge Moore and Ms. Brooks were describing. The Court, the Board, excuse me, found Planned and Ordinary Meeting and our construction that they adopted as Planned and Ordinary Meeting was simply software code at a particular level, so it doesn't require interaction. But at a particular level means that there exist other levels. That's it. One of their arguments was that they read out the word layer, right, that software is not the same thing as a software layer, because layering implies, like I would not say that your clothes were layered if all you were wearing was a shirt. Nothing else. No undershirt, no jacket. I wouldn't say, oh, that's a shirt layer, you know what I mean, because there's nothing else. So the software has to, whether it's interactive, there has to be something to the word layer. It has to mean something. And I don't think the Board read it out, because when they pointed to the memory in Giles, they were saying that this software interacts with this memory, which is all on the same processor chip. And so I think that regardless of what the definition of layer means, in this case, a software layer, it was sufficiently met by their fact findings in light of Giles. Is that fair? I agree with all that. I agree with all that. And I don't think we need to get to. Well, you were fighting, Joe Stark, a little bit on the interact point. That's why I wasn't sure. Simply because I don't think there's any problem with the way the Board construed software layer. But if some interaction is required, of course the software is interacting in Giles with the secure component. And so, yes, you can have interaction. And if this Court were to write an opinion that required some interaction between a software layer and another layer, it just doesn't have to be multiple software layers. So I think in your analogy, if my body is the hardware layer and my single shirt is the software layer, and somehow there's some hypothetical interaction between my body and the shirt, that would meet a construction that requires some interaction between the hardware layer and the software layer. That's an imperfect. I'm trying to run with the analogy here. Not well. You're not running well. But the interaction, excuse me, and this really gets to, I'd like to move on to the deposition admission, or purported admission that Ms. Brooks latched onto, and it's all over the briefs. I can't count the number of times I raised it. Dr. Alpert, at his deposition, was being asked not about the 002 patent, not about Giles, the reference that the Board found invalidated the claims. And he was really not even being asked about any reference at all when he was simply asked whether software can be a software layer. And his answer, which Ms. Brooks, I believe, respectfully mischaracterized, I wrote down as Alpert admits Giles does not include more than one layer. It was not about Giles at all. To be crystal clear, it's at pages 1647 and 1648. Do you really think this matters? I don't. But because Ms. Brooks and the briefs, I don't. And the Board already found communication in Giles between the OTP members. I mean, you can beat a dead horse a couple more times if you want, but you don't really have to. I'll yell the rest of my time, Your Honor. The deposition testimony, which is extrinsic evidence, which the Board considered all of it, does not stand for what Ms. Brooks said during her opening remarks. He was not talking about Giles. In the abstract, a piece of software out here, a little app that somebody develops out in Silicon Valley, may or may not be a software layer. People of ordinary skill in the art might not refer to it as a layer. That's all he was saying in that piece of deposition testimony that Ms. Brooks mentioned. Okay. With that, I will yield my time. Thank you. Ms. Brooks, you have some more time. So, Your Honors, I want to talk about your question on whether the Board found that the boot ROM code in Giles interacts with the OTP memory and whether or not that would constitute interacting with another level or layer. I think, Your Honor, if that were true, then any software would be a software layer. It, again, I think goes back to our argument that, in that case, there would be no difference between software and software layer. And the reason is that any code, right, which would be software, would, by virtue of it being software or code, interact with something else, right? And so I want to point you to some testimony by Microchip's expert. He says, at Appendix 1589, executed on a processor is a basic definition of software. He also said, at Appendix 1646, code would be executed on a processor. That's a common understanding. And he's talking about just the term software without the word layer attached to it. So, respectfully, Your Honor, I think that if the boot ROM code of Giles were interacting just with the OTP memory, that would be any code would be interacting with some – any software code would be interacting with something else. And I do think that would render the layer part of software layer meaningless to a person of ordinary skill. The other thing I wanted to – so before you move on, my clerk's not fast enough. He's way too slow on the balcony, giving me the site that I'm looking for. But my recollection – and so you'll just have to, at this point, correct me because I'm just going to wing it. But my recollection is, during prosecution, you distinguished this because the thing that the software layer was interacting with was off-chip. And in this case, that's why I was very careful to show you, the board defined the entire thing as within-chip. So, in this case, you have the software interacting with something else on the same chip. The software layer is interacting with another layer contained on the same chip. And during prosecution, you specifically overcame the prior arc by saying, oh, no, that thing doesn't count because it's off-chip. Our software module is interacting with something off-chip. Therefore, they're not layers. So I don't think I've read it out of existence. I might be completely misremembering it. My clerk now says I could look at A636, but that chip has sailed, Law Clerk. So that part of our argument, Your Honor, was with respect to a certain term in claim limitation in Claim 1, which requires the software layer, let me read it, to access trusted resources in said secured processor. So what we were saying is the trusted resources have to be located on the secure processor, whereas the trusted resources are the OTP memory. Whereas in the prior arc, it was located off-chip, and we were equating that with Giles as well, which if you look at the block diagram, it looks like it's located off-chip. So that was the trusted resources being located on the secure processor, not for the software layer term, if that makes sense. I do. I understand your argument. The last thing I wanted to point to, Your Honor, one last thing, is Appendix 1274. All the examples of software layer, while a base layer could be the hardware layer, they're stacked one above the other, and most often there is a software layer interacting with another software layer, even if the base layer is a hardware layer. And an example of that, Your Honor, is at Appendix 1274. This is actually an example that Microchip cites. There's a boot layer, a memory management layer, and an access layer. And I believe at least maybe all three of these are software layers, but that, again, I don't think is disclosed in Giles, and the Board did not make such a finding. Okay. We thank both counsel. This case is taken under submission.